UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ERNESTO ANTONIO FERNANDES, JR.    )
and RONEI TEOTONIO DEOLIVEIRA,    )
                                  )
          Plaintiffs,             )
      v.                          )          CIVIL ACTION
                                  )          NO. 09-11912-JGD
QUARRY HILLS ASSOCIATES, L.P.,    )
d/b/a THE TAVERN AT QUARRY        )
HILLS, WILLIAM S. O'CONNELL       )
and WALTER HANNON, III,           )
                                  )
          Defendants.             )

# MEMORANDUM OF DECISION AND ORDER ON
# DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

December 28, 2010

DEIN, U.S.M.J.

## I.  INTRODUCTION

Plaintiffs Ernesto Antonio Fernandes, Jr. ("Fernandes") and Ronei Teotonio

DeOliveira ("DeOliveira") have brought this action against their former employer, Quarry

Hills Associates, L.P., d/b/a The Tavern at Quarry Hills ("Quarry Hills"), and two of its

owners, William S. O'Connell ("O'Connell") and Walter Hannon, III ("Hannon"),

claiming that the defendants failed to pay them for overtime work in violation of the Fair

Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA").   The matter is presently before

the court on the "Defendants' Rule 12(c) Motion for Judgment on the Pleadings" (Docket

No. 18).  By their motion, the defendants contend that the plaintiffs' claims for overtime

pay could have and should have been pursued in a state court action that the plaintiffs

brought against the defendants in Norfolk Superior Court (the "State Court Action"), and

that, therefore, the plaintiffs are precluded by principles of res judicata and claim splitting

from maintaining their FLSA claims in this case. As detailed herein, this court finds that

while the lack of a final judgment in the State Court Action renders the application of res

judicata premature at this time, the plaintiffs' FLSA claims nevertheless must be

precluded pursuant to the rule against claim splitting. Accordingly, and for all the

reasons detailed below, the defendants' motion for judgment on the pleadings is

ALLOWED.

## II. <u>STATEMENT OF FACTS</u>

When ruling on a motion for judgment on the pleadings, the court must "view the

facts contained in the pleadings in the light most favorable to the party opposing the

motion – here, the plaintiff[s] – and draw all reasonable inferences in the plaintiff[s']

favor." <u>Curran v. Cousins</u>, 509 F.3d 36, 43 (1st Cir. 2007). In doing so, "'[t]he court

may supplement the facts contained in the pleadings by considering documents fairly

incorporated therein and facts susceptible to judicial notice.'" <u>Id.</u> (quoting <u>R.G. Fin.

Corp. v. Vergara-Nunez</u>, 446 F.3d 178, 182 (1st Cir. 2006)). "Thus, where the motion

. . . is premised on a defense of res judicata – as is true in the case at hand – the court

may take into account the record in the original action." <u>Andrew Robinson Int'l, Inc. v.

Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008) (internal citation omitted).

Applying this standard to the instant case, the relevant facts are as follows.[1]

## **Plaintiffs' Employment With Quarry Hills**

Defendant Quarry Hills owns and operates The Tavern at Quarry Hills ("Tavern"), a restaurant which is located on the premises of the Granite Links Golf Club in Quincy, Massachusetts. (Compl. (Docket No. 1) ¶ 7). Defendant O'Connell is the president of and holds an ownership interest in Quarry Hills. (Id. ¶ 8). Defendant Hannon also holds an ownership interest in Quarry Hills and is the General Manager of the Tavern. (Id. ¶ 9).

Plaintiff Fernandes began working as a line cook at the Tavern on about February 1, 2006. (Id. ¶ 10). His responsibilities included food preparation, cooking, and cleaning the kitchen, but allegedly did not include any supervisory duties. (Id. ¶¶ 13-14). In particular, Fernandes claims that he had no responsibility for other employees or for bookkeeping, and that he was not involved in any hiring or firing decisions. (Id. ¶ 14).

Fernandes contends that he worked at least 72 hours per week throughout his employment at the Tavern, but that Quarry Hills failed to pay him time and one-half his regular rate of pay for the hours he worked in excess of 40 hours. (Id. ¶ 12). Instead, according to the plaintiff, the "Defendants manipulated the figures on [his] paychecks so

---

[1] In support of their opposition to the defendants' motion, the plaintiffs have submitted, among other things, excerpts from their deposition testimony. Because such evidence is not admissible on a motion pursuant to Fed. R. Civ. P. 12(c), this court has not considered it.

that on some of them it appears that they were paying the overtime when in fact they were paying [the plaintiff] only [his] agreed hourly rate." (Id.).

In October 2007, during the course of an investigation by the United States Department of Labor ("DOL"), the defendants allegedly threatened to terminate Fernandes unless he misled the DOL investigator into believing that he was not entitled to overtime pay under federal law. (See id. ¶¶ 15, 26-27). Fernandes claims that as a result of the defendants' coercion, he made statements to the DOL investigator "which were favorable to a finding that Plaintiff was exempt from the provisions of the FLSA." (Id. ¶ 15). Nevertheless, on November 26, 2007, the DOL allegedly advised O'Connell that the defendants had violated federal law by failing to pay overtime to 55 employees, and on November 28, 2007, Fernandes was terminated from his employment with Quarry Hills. (Id. ¶ 11). Fernandes contends that the defendants, with the involvement of the Quincy Police Department, carried out his termination "under the false pretense that he had stolen tens of thousands of dollars worth of inventory." (Id. ¶¶ 16-17). He further claims that the real reason the defendants fired him was to avoid a further inquiry into whether they owed him back wages. (Id. ¶ 16).

Plaintiff DeOliveira worked as a line cook at the Tavern from July 2006 until his termination on November 28, 2007. (Id. ¶¶ 18-19). The plaintiffs claim that the circum-stances of his employment and termination were nearly identical to those of Fernandes. Thus, like Fernandes, DeOliveira's duties included food preparation, cooking, and cleaning the kitchen, but allegedly excluded any managerial responsibilities. (Id. ¶¶ 21-

-4-

22).  Additionally, DeOliveira contends that he consistently worked at least 80 hours per week during the course of his employment at the Tavern, but that the defendants failed to pay him time and one-half his regular rate of pay for the hours he worked in excess of 40 hours per week.  (Id. ¶ 20).

DeOliveira alleges that the defendants threatened to terminate him unless he lied to the DOL investigator regarding his eligibility for overtime pay, and that he "was coerced . . . into making statements to [the] DOL investigator which were favorable to a finding that Plaintiff was exempt from the provisions of the FLSA."  (See id. ¶¶ 23, 28-29).  He further claims that the defendants terminated his employment, "under the false pretense that he had stolen tens of thousands of dollars worth of inventory."  (Id. ¶ 24).  Like Fernandes, DeOliveira contends that the defendants' real reason for firing him was to avoid a further inquiry into whether they owed him back wages.  (Id.).

## The State Court Action

On March 14, 2008, Fernandes and DeOliveira filed a complaint in Norfolk Superior Court against Quarry Hills, O'Connell and Hannon.  (Def. Ex. A).[2]  Therein, the plaintiffs asserted claims against the defendants, pursuant to Mass. Gen. Laws ch. 149, § 148, for failure to pay them wages for all of the hours they had worked at the Tavern. (Def. Ex. B).  They also asserted claims against the defendants, pursuant to Mass. Gen. Laws ch. 151, § 1A, for failure to pay them overtime at a rate of time and one-half their

---

[2]  The defendants' exhibits are attached to the "Defendants' Memorandum in Support of Their Rule 12(c) Motion for Judgment on the Pleadings" ("Def. Mem.") (Docket No. 19).

regular rate of pay for the hours they had worked at the Tavern in excess of 40 hours per week. (Id.). However, the plaintiffs did not assert any claims under federal law. (See id.).

In April 2008, the defendants filed a motion to dismiss the plaintiffs' complaint in the State Court Action, arguing, inter alia, that restaurant workers are expressly exempt from the overtime statute pursuant to Mass. Gen. Laws ch. 151, § 1A(14). (Def. Ex. C). The plaintiffs did not move to amend their complaint at that time despite the clear language of the state statute. Thus, on October 21, 2008, the motion to dismiss was allowed in part and denied in part, with the state court ruling that, under Massachusetts law, restaurant workers are exempt from overtime pay. (See Def. Ex. E). The motion was otherwise denied, and the parties proceeded to litigate the plaintiffs' claims for unpaid wages. (Id.).

At no time during the discovery period did the plaintiffs' move to amend their complaint in response to the dismissal of the state overtime claims. On July 17, 2009, the state court set a trial date of October 5, 2009, approximately one year after the state overtime claims had been dismissed. (Def. Ex. A at Docket No. 14). It was not until September 30, 2009, however, that the plaintiffs served on defense counsel a motion to amend their complaint in order to add claims for unpaid overtime under the FLSA. (See Pl. Ex. 5 at 1 n.1; Def. Ex. G).[3] According to plaintiffs' counsel, the amendment was

---

[3] The plaintiffs' exhibits are attached to the "Plaintiffs' Opposition to Defendants' Rule 12(c) Motion for Judgment on the Pleadings" ("Pl. Opp. Mem.") (Docket No. 20).

motivated by the fact that he had learned during the plaintiffs' depositions that they allegedly had been pressured into giving false statements about their job responsibilities to the DOL, so that there was now a basis for challenging the DOL's determination that the plaintiffs were exempt from federal overtime laws.  (See Pl. Opp. Mem. at 17-18).

With the trial scheduled to begin, the defendants opposed the motion to amend, arguing that it was "woefully untimely," and that it unfairly sought to introduce a new theory of liability and class of damages.  (Pl. Ex. 5 at 1, 3).  Thus, the defendants argued, they would have conducted different discovery and presented a different defense, i.e., that the plaintiffs were exempt from overtime pay under federal law, if the plaintiffs had asserted their FLSA claims earlier.  (Id. at 3).  The defendants also suggested that, with the addition of the FLSA claim, they could seek to remove the case to federal court.  (Id. at 1-2).

The State Court Action was not reached for trial on October 5, 2009.  On November 3, 2009, the state court denied the plaintiffs' motion to amend, ruling that "[i]t is too late to add a theory of recovery under a federal statute."  (Def. Ex. H).  Three days later, on November 6, 2009, the plaintiffs brought the present action to recover damages arising from the defendants' alleged failure to pay them time and one-half their regular rate of pay for the hours they had worked at the Tavern in excess of 40 hours per week. (Compl. at Counts I and II).

The plaintiffs' surviving claims in the State Court Action were tried before a jury, and on April 7, 2010, the jury returned a verdict in favor of both plaintiffs, awarding them

damages on their claims for unpaid wages under state statutory law. (Pl. Ex. 2).

Subsequently, the plaintiffs sought treble damages, as well as costs and attorneys' fees

pursuant to Mass. Gen. Laws ch. 149, § 150. (See Def. Ex. A at Docket No. 31; Pl.

Supp. Ex. at 2, 10).[4] On June 7, 2010, the state court issued a Memorandum of Decision

and Order in which it awarded the plaintiffs enhanced damages, costs and reasonable

attorneys' fees. (Pl. Supp. Ex.). However, it is undisputed that to date, no final judgment

has been entered in the State Court Action. (See Def. Mem. at 4; Pl. Opp. Mem. at 6-7).

Additional factual details relevant to this court's analysis are described below

where appropriate.

## III.  ANALYSIS

### A.  Standard of Review

The defendants are seeking judgment on the pleadings pursuant to Fed. R. Civ. P.

12(c). The legal standard for evaluating a motion for judgment on the pleadings is

essentially the same as the standard for evaluating a motion to dismiss under Fed. R. Civ.

P. 12(b)(6), except that "[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates

the pleadings as a whole." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54-55 (1st Cir.

2006). Thus, when confronted with a motion for judgment on the pleadings, the court

must "view the facts contained in the pleadings in the light most favorable to the party

---

[4] The plaintiffs' supplemental exhibit is attached to the "Plaintiffs' Request for Leave to File an Addendum to Their Opposition to Defendant's Motion for Judgment on the Pleadings" (Docket No. 22).

opposing the motion . . . and draw all reasonable inferences in [that party's] favor."

Curran, 509 F.3d at 43. Dismissal is only appropriate if the pleadings, so viewed, fail to

support a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490

F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127

S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

### B.   Res Judicata

The defendants argue that because the plaintiffs could have litigated their FLSA

claims in the State Court Action, they are barred by the doctrine of res judicata from

asserting those claims in this forum. For the reasons that follow, this court finds that

while the defendants are able to establish two of the three elements necessary for res

judicata to apply, the lack of a final judgment in the State Court Action renders their

argument premature.

"*Res judicata*, also known as claim preclusion, 'makes a valid, final judgment

conclusive on the parties and their privies, and prevents relitigation of all matters that

were or could have been adjudicated in the action.'" Kucharski v. Tribeca Lending

Corp., 620 F. Supp. 2d 147, 150 (D. Mass. 2009) (quoting O'Neill v. City Manager, 428

Mass. 257, 259, 700 N.E.2d 530, 532 (1998)). Where, as here, a federal court is asked to

determine "the preclusive effect of a Massachusetts state court adjudication, [the] federal

court[ ] appl[ies] the Massachusetts law of *res judicata*." Id. See also Cruz v. Melecio,

204 F.3d 14, 18 (1st Cir. 2000) ("state law, with all its wrinkles, applies in deciding the

res judicata effect of a state court judgment in a federal court"). "Under Massachusetts

law, *res judicata* requires: '(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits.'" Kucharski, 620 F. Supp. 2d at 150 (quoting Kobrin v. Bd. of Registration in Med., 444 Mass. 837, 843, 832 N.E.2d 628 (2005)). "Because claim preclusion is an affirmative defense, 'the party asserting it has the burden of establishing the facts necessary to support it.'" Carpenter v. Carpenter, 73 Mass. App. Ct. 732, 738, 901 N.E.2d 694, 699 (2009) (quoting Akinci-Unal v. Unal, 64 Mass. App. Ct. 212, 220, 832 N.E.2d 1, 7 (2005)). Thus, the defendants have the burden of establishing that all three elements are satisfied.

There is no dispute that both the State Court Action and the instant case involve the same parties or their privies. (Def. Mem. at 9; Pl. Opp. Mem. at 6). At issue is whether the remaining elements have been satisfied. For the reasons detailed below, this court finds that there is an identity of causes of action, but that there has been no final judgment in the State Court Action for purposes of claim preclusion.

### i.    Identity of Cause of Action

"Massachusetts deems causes of action identical for claim preclusion purposes if they grow out of the same transaction, act, or agreement, and seek redress for the same wrong." Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 52 (1st Cir. 2008) (quotations, punctuation and citations omitted). This does not mean that the claims in each action must be the same for res judicata to apply. Rather, "[d]iscrete theories of liability may constitute identical causes of action for claim preclusion purposes if they are

based on the same nucleus of operative facts." Id. Similarly, the second action is barred if it merely seeks different damages arising out of the same transaction or series of transactions. Bendetson v. Bldg. Inspector of Revere, 36 Mass. App. Ct. 615, 619, 634 N.E.2d 143, 146 (1994), and cases cited. The plaintiffs contend that the defendants have failed to meet their burden of establishing that the causes of action in the two proceedings are identical. As detailed below, this court disagrees, and finds that the defendants have met their burden of proof on this issue.

### Judicial Estoppel

The plaintiffs argue as an initial matter that the defendants should be judicially estopped from arguing that the claims in this action are identical to the claims in the State Court Action because their current position contradicts their prior representations, made in opposition to the plaintiffs' motion to amend in the state proceeding, "that the claims were not identical." (Pl. Opp. Mem. at 9-10 (emphasis omitted)). This court finds that judicial estoppel is not applicable to the circumstances of this case.

"'As a general matter, the doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding.'" Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 32-33 (1st Cir. 2004) (quoting InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003)). The primary purpose of the doctrine "is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system." Id. at 33. "Consequently, the 'guiding

principle of judicial estoppel' is that it should apply 'when a litigant is playing fast and loose with the courts, and when intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" GE HFS Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 520 F. Supp. 2d 213, 223 (D. Mass. 2007) (quoting Patriot Cinemas, Inc. v. Gen. Cinemas Corp., 834 F.2d 208, 212 (1st Cir. 1987)) (internal quotations omitted).

While "[t]he contours of the doctrine are hazy, and there is no mechanical test for determining its applicability[,]" the First Circuit has determined that, "at a minimum, two conditions must be satisfied before judicial estoppel can attach. First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive. Second, the responsible party must have succeeded in persuading a court to accept its prior position." Alt. Sys. Concepts, Inc., 374 F.3d at 33 (internal citations omitted). Additionally, "[w]hile it is not a formal element of a claim of judicial estoppel, courts frequently consider a third factor: absent an estoppel, would the party asserting the inconsistent position derive an unfair advantage? Relatedly, courts often inquire as to whether judicial acceptance of a party's initial position conferred a benefit on that party." Id. (internal citation omitted). Accordingly, "in a prototypical case, judicial estoppel applies when 'a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of legal advantage.'" Id. (quoting InterGen N.V., 344 F.3d at 144).

The conditions necessary for judicial estoppel to apply are not present in the instant case. As an initial matter, the defendants, in opposing the motion to amend, never argued that the plaintiffs' proposed FLSA claims were not transactionally related to the existing claims in the State Court Action or that they did not arise out of the same nucleus of operative facts. Rather, they asserted that the motion should be denied because it was untimely and because the defendants would be prejudiced by the plaintiffs' belated attempt to assert a new theory of liability just days before trial. (See Pl. Ex. 5 at 2-3). Thus, the defendants' positions in state and federal court were not "directly inconsistent." See Alt. Sys. Concepts, Inc., 374 F.3d at 33.

Perhaps even more importantly, the state court's decision to deny the plaintiffs' motion to amend their complaint to add claims under the FLSA was based on untimeliness. (See Def. Ex. H). The defendants did not obtain a favorable ruling by persuading the court to accept a position that is inconsistent with their present arguments. Instead, the court apparently relied on the fact that the plaintiffs were seeking to add a new federal law claim when the case was already called for trial. Accordingly, the record does not support the conclusion that the defendants have played "fast and loose" with the court or that they should be estopped from asserting that res judicata applies.

### Relationship Between Past and Present Claims

A review of the complaints in the State Court Action and the present case establishes that both actions arise from a common nucleus of operative facts. All of the claims in the two actions arise out of the plaintiffs' employment relationship with the

defendants and their assertion that they were not paid for all of the time they worked at the Tavern. Thus, the two lawsuits share a common factual origin and arise from the same transaction or series of transactions.

Furthermore, in both cases, the plaintiffs are seeking relief for the same wrong — the defendants' alleged failure to fully compensate them for all of the work they performed.[5] Indeed, at the time they filed their complaint with the state court, the plaintiffs were seeking the very same damages for failure to pay overtime that they are pursuing here. In both actions the plaintiffs have alleged that "Fernandes always worked at least 72 hours per week," and that "DeOliveira always worked at least 80 hours per week," but the defendants failed to pay them at a rate of time and one-half their regular rate of pay for the hours worked in excess of 40 hours per week. (Def. Ex. B ¶¶ 9, 14, 19, 24, 29, 34; Compl. ¶¶ 12, 20). The fact that they were not seeking to recover those damages under the FLSA in the State Court Action, but instead were pursuing them under state law, does not render res judicata inapplicable. "Claim preclusion applies 'even though the claimant is prepared in a second action to present different evidence or legal theories to support his claim.'" Bagley v. Moxley, 407 Mass. 633, 638, 555 N.E.2d 229,

---

[5] This case is distinguishable from Hicks v. O'Meara, 31 F.3d 744 (8th Cir. 1994), on which the plaintiffs rely. In that case, the Eighth Circuit Court of Appeals determined that res judicata did not bar the plaintiffs' wage and overtime claims under the FLSA because the earlier action involved a wrongful termination claim in which the plaintiffs challenged their dismissal from employment in breach of their contract, rather than a claim that they were not paid enough during the time they did work. See Hicks, 31 F.3d at 746. Here, in contrast, the plaintiffs are seeking to hold the defendants liable in both actions for the alleged failure to pay them for all the time they worked at the Tavern.

232 (1990) (quoting <u>Heacock v. Heacock</u>, 402 Mass. 21, 23, 520 N.E.2d 151, 153 (1988)).  <u>See</u> <u>also</u> <u>Carpenter</u>, 73 Mass. App. Ct. at 738, 901 N.E.2d at 699 (claim preclusion "will be applied to extinguish a claim even though the plaintiff is prepared in the second action to present evidence, grounds, or theories of the case not presented in the first action or to seek remedies or forms of relief not demanded in the first action" (quotations and citations omitted)).  Because the gravamen of the plaintiffs' wage and overtime claims in the State Court Action was the same as it is in the present case, their causes of action are identical for purposes of res judicata.[6]

Nevertheless, the plaintiffs argue that their claims in the two cases do not arise out of the same transaction because they "are not related in time, space, origin, or motivation and they do not form a convenient trial unit."  (Pl. Opp. Mem. at 12).  This court disagrees.

The question whether the claims in the two actions "arose out of the same transaction or series of transactions . . . is to be determined 'pragmatically.'"  <u>Bendetson</u>, 36 Mass. App. Ct. at 619, 634 N.E.2d at 146 (quoting Restatement (Second) of

---

[6]  The plaintiffs argue that the denial of their motion to amend to add FLSA claims in the State Court Action does not preclude them from pursuing such claims in this court because the state court's ruling was not a ruling on the merits of their FLSA claims.  (Pl. Opp. Mem. at 4-6).  However, this argument misconstrues the defendants' claim.  The defendants are not relying on the court's denial of the motion to amend to support their argument that res judicata applies.  Rather, they contend that the plaintiffs are barred from asserting their claims for overtime pay under the FLSA in this action because those claims and the claims that the plaintiffs brought in state court are identical under the doctrine of res judicata.  As detailed above, this court agrees that the plaintiffs' claims in both actions arise out of a common nucleus of operative facts, and are therefore identical for purposes of claim preclusion.

Judgments, § 24(2) (1982)).  Under Massachusetts law, "'[w]hether the facts are related in origin or motivation and whether they form a convenient trial unit are among the considerations.'"  Id. (quoting Saint Louis v. Baystate Med. Ctr., Inc., 30 Mass. App. Ct. 393, 399, 568 N.E.2d 1181, 1185 (1991)).  However, "[i]f the second action merely presents 'different . . . legal theories to support . . . [the] claim, or seeks different remedies,' the second action is barred."  Id. (quoting Heacock, 402 Mass. at 23, 520 N.E.2d at 153).  That is the situation here.  As detailed above, a cause of action under the FLSA constitutes nothing more than a new legal theory under which the plaintiffs are seeking to pursue their claims against the defendants for failing to pay them for all of the time they worked at the Tavern.

In a further attempt to distinguish their FLSA claims from their prior claims, the plaintiffs argue that "the origin of the federal action arises from the defendants' willful and intentional fraud and coercion in inducing the plaintiff's (sic) to give inaccurate job descriptions to the DOL."  (Pl. Opp. Mem. at 13).  The record does not support this contention.  The facts regarding the plaintiffs' job responsibilities and whether the plaintiffs are or are not exempt from federal overtime claims have not changed.  While plaintiffs' counsel may have garnered evidence to challenge the DOL determination that the plaintiffs were exempt managerial employees, "the origin of the federal action" remains plaintiffs' entitlement to overtime pay due to the work they performed, not their statements to the DOL.

Moreover, the factual circumstances giving rise to the defendants' alleged failure to pay the plaintiffs for all of their work, including the alleged coercive conduct involving the DOL investigation, was presented in the state court. (See Pl. Supp. Ex. at 6-7). In fact, the state court judge expressly acknowledged that "the circumstances of the plaintiffs['] execution of statements to federal investigators that they were salaried managers is relevant on the issue relating to determination of the propriety of multiple damages." (Id. at 7). He relied on evidence that the plaintiffs' statements to federal investigators "were the product of some pressure or suasion on the part of the defendants" in deciding to award them treble damages. (Id.). The fact that evidence of the plaintiffs' communications with the DOL was presented in the State Court Action further supports this court's conclusion that the claims in both actions arise from a common nucleus of operative facts.

Similarly unpersuasive is the plaintiffs' effort to distinguish the two cases by characterizing the State Court Action as essentially "a breach of employment contract action" involving different defenses and types of evidence than those involved in a FLSA action. (See Pl. Opp. Mem. at 13). As an initial matter, the plaintiffs' claims in the State Court Action, like those asserted here, were based on statutory wage laws and did not include claims for breach of contract. Moreover, as explained supra, the fact that a plaintiff "is prepared in a second action to present different evidence or legal theories to support his claim" is not sufficient to defeat claim preclusion. Bagley, 407 Mass. at 638, 555 N.E.2d at 232. Because the two actions "are based on the same nucleus of operative

facts[,]" it does not matter that the claims in the State Court Action were based on state statutory laws rather than on federal law.  <u>Andrew Robinson Int'l, Inc.</u>, 547 F.3d at 52.

Nor does it matter that the overtime claims were dismissed in the State Court Action, leaving only the claims for unpaid wages.  The state court had jurisdiction over the FLSA claim.  <u>See</u> 29 U.S.C. § 216(b).  Because the claims asserted in the state court complaint are transactionally related to the claims pending in this court, it was incumbent upon the plaintiffs to bring their FLSA claims in the first action.  <u>See</u> <u>Carpenter</u>, 73 Mass. App. Ct. at 738, 901 N.E.2d at 699 (explaining that claim preclusion "bars further litigation of all matters that were or should have been adjudicated in the [earlier] action" (quotations and citations omitted)).

## ii.   <u>Finality of State Court Judgment</u>

Having determined that the first two elements of claim preclusion have been satisfied, this court turns to the issue whether there has been a final judgment on the merits in the State Court Action.  The record before this court shows that a jury verdict has been rendered in favor of the plaintiffs, and that the state court judge has awarded the plaintiffs enhanced damages, costs and attorneys' fees.  However, no final judgment has yet been entered in that matter.  Until that final step has been taken, claim preclusion cannot apply.  <u>See</u> <u>Gates v. Reilly</u>, 453 Mass. 460, 465, 902 N.E.2d 934, 940 (2009) (finding that res judicata did not apply to claims that had been dismissed in earlier proceeding because no final judgment had been entered with respect to those claims).

The defendants do not dispute that "there can be no res judicata/claim preclusion unless and until final judgment enters" or that no final judgment had been entered in the State Court Action at the time they filed their motion for judgment on the pleadings. (Def. Mem. at 9 n.12). Nevertheless, the defendants anticipated that by the time this court addressed their motion, final judgment would have been entered in the prior action and they would have supplemented the record accordingly. (Id.). Had the defendants' expectation come to fruition, claim preclusion would bar the plaintiffs' FLSA claims in this action.[7] However, because no such judgment has been entered to date, the application of res judicata would be premature.

### C. Prohibition on Claim Splitting

The defendants argue that even in the absence of a final judgment in the State Court Action, the plaintiffs should be prohibited under the rule against claim splitting from pursuing claims for the same wrongdoing that could have been brought in state court. (Def. Mem. at 11-12). This court agrees and concludes that the plaintiffs' failure to timely pursue their FLSA claims in the State Court Action, despite having had the opportunity to do so, precludes them from maintaining those claims in this forum.

---

[7] The plaintiffs argue that once final judgment has been entered in the State Court Action, it may not constitute a final judgment on the merits for claim preclusion purposes if the defendants pursue an appeal. (Pl. Opp. Mem. at 7). However, under Massachusetts law, "a trial court judgment is final and has preclusive effect regardless of the fact that it is on appeal." O'Brien v. Hanover Ins. Co., 427 Mass. 194, 201, 692 N.E.2d 39, 44 (1998). Therefore, the entry of final judgment in the prior action will preclude the plaintiffs from pursuing their federal claims under the doctrine of res judicata.

The rule against claim splitting "prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." Myers v. Colgate-Palmolive Co., 102 F. Supp. 2d 1208, 1224 (D. Kan. 2000) (internal citation omitted). Like res judicata, "[c]laim splitting bars claims that existed at the time a party filed its previous suit." Eight Arlington St., LLC v. Arlington Land Acquisition-99, LLC, 22 Mass. L. Rptr. 733, 2007 WL 2367753, at *9 (Mass. Super. Aug. 3, 2007) (unpub. op.). The purpose of the rule is to "requir[e] a plaintiff to address all related claims in one action and protect[ ] the defendant from the necessity of litigating similar claims in separate actions." Oxbow Energy, Inc. v. Koch Indus., Inc., 686 F. Supp. 278, 282 (D. Kan. 1988). Additionally, the prohibition on claim splitting, like res judicata, serves to conserve judicial resources, prevent inconsistent decisions and encourage reliance on judicial decisions. See Myers, 102 F. Supp. 2d at 1224.

Claim splitting is distinct from the doctrine of res judicata because it precludes a party from splitting his causes of action and filing a second lawsuit based on the same wrong "even absent final judgment" in the earlier action. Oxbow Energy, Inc., 686 F. Supp. at 282. As another judge in this Court has explained:

> "If a claim is both transactionally related to one which is the subject of a pending lawsuit and was in existence at the time the first lawsuit was filed, then, for all the same policy reasons that underlie the doctrine of claim preclusion, it is incumbent on the plaintiff either to 1) include the second claim in the original complaint, or 2) bring the second claim into the first action by a motion to amend filed early enough to be allowed without undue disruption of the existing case."

Kucharski, 620 F. Supp. 2d at 151 (quoting Integrated Techs. Ltd. v. BioChem Immunosystems, (U.S.) Inc., 2 F. Supp. 2d 97, 102-03 (D. Mass. 1998)).  As detailed above, the plaintiffs' FLSA claims are transactionally related to their claims in the State Court Action.  Therefore, those claims should have been included in their state court complaint or brought in via a timely motion to amend.  Instead, the plaintiffs waited until about a week before their originally scheduled trial to serve their motion to add the federal claims.  Under the rule against claim splitting, they cannot avoid their own delay in moving to amend their complaint by maintaining their FLSA claims here.

The plaintiffs argue that they should not be precluded from pursuing their federal claims for overtime pay because those claims were not in existence at the time they filed their complaint in the State Court Action.  (Pl. Opp. Mem. at 16-17).  This argument is belied by the record.  Specifically, the record establishes that the plaintiffs were terminated from their employment at the Tavern before they commenced their lawsuit in the state court.  (See Compl. ¶¶ 17, 19; Def. Ex. A at Docket No. 1).  To the extent the plaintiffs were not fully paid for the work they performed at the Tavern, those unpaid wages had become fixed by the time they filed their state court complaint.  Furthermore, as illustrated by the claims and allegations set forth in that complaint, the plaintiffs were fully aware of the fact that they had not been paid for all the time, including overtime, that they had worked for Quarry Hills.

Nevertheless, the plaintiffs argue that "[a]t the time of the commencement of the state action, the plaintiffs had been told by the DOL that they were not eligible for

overtime under the federal statute" so they "could not bring a good faith claim under the FLSA at the time they brought their state action." (Pl. Opp. Mem. at 17). They further contend that it was only as a result of discovery in the State Court Action that they concluded that the DOL's determination had been based on factually inaccurate statements, including "factually inaccurate statements that had been coerced by the defendants." (Id.). According to the plaintiffs, "[o]nce it became reasonably clear that the DOL determination was nonbinding and the product of fraud," they immediately moved for leave to amend to add their FLSA claims. (Id. at 18).

This argument too is unpersuasive. The "factually inaccurate statements that had been coerced by the defendants" consisted of the plaintiffs' own statements to the DOL investigator in October 2007 regarding their alleged status as managers. (See Compl. ¶¶ 15, 23). Furthermore, the "discovery" the plaintiffs are referring to consisted of the plaintiffs' own depositions in which they testified "that statements were made under duress." (Pl. Opp. Mem. at 17 n.13). These facts have been known to the plaintiffs since their meeting with the DOL, and the suggestion that the plaintiffs had no basis for asserting FLSA claims until after they testified at their own depositions defies logic. Moreover, even assuming "the FLSA claims surfaced at the plaintiffs' depositions on June 15, 2009," as the plaintiffs contend, the plaintiffs still waited over three months to serve their motion to amend despite a pending trial date. (See id.; Pl. Ex. 5 at 1). Accordingly, the plaintiffs' arguments do not alter this court's conclusion that the

defendants are entitled to judgment on the pleadings pursuant to principles of claim splitting.

### D. Equitable Considerations

The plaintiffs nevertheless urge this court to deny the defendants' motion on equitable grounds. This court declines to do so. Although the preclusive effect of a prior action "'should be addressed from the perspective of fairness and efficient judicial administration[,]'" equitable considerations favor a judgment for the defendants. Giragosian v. Ryan, 547 F.3d 59, 64 (1st Cir. 2008) (quoting Tinkham v. Jenny Craig, Inc., 45 Mass. App. Ct. 567, 571, 699 N.E.2d 1255, 1258 (1998)).

The plaintiffs contend that they will suffer undue prejudice if they are not permitted to maintain their FLSA claims. In support of this position they assert that there was no delay in their effort to pursue those claims in the State Court Action, and that their claims under the FLSA are meritorious. (Pl. Opp. Mem. at 19-20). Whether or not the plaintiffs' federal overtime claims have merit, an issue that cannot be resolved absent further development of the record, it is apparent for the reasons discussed above that the plaintiffs had an opportunity to assert all of their wage and overtime claims in one action, but chose not to do so. It is equally apparent that the plaintiffs were responsible for the delay in filing the motion to amend the complaint in the State Court Action. Conse-quently, any prejudice to the plaintiffs from having to forego their FLSA claims was caused by their own actions, and does not support the denial of the pending motion. See Maher v. GSI Lumonics, Inc., 433 F.3d 123, 128 (1st Cir. 2005) (holding that equitable

exception to the application of res judicata did not apply where plaintiff had full and fair opportunity to litigate all claims in one proceeding, and preclusion of second action resulted from plaintiff's own actions).

The plaintiffs' argument that there would be no prejudice to the defendants if this litigation is allowed to proceed is similarly unpersuasive. As discussed above, one of the principal purposes of the rule against claim splitting is to "protect[ ] the defendant from the necessity of litigating similar claims in separate actions." Oxbow Energy, Inc., 686 F. Supp. at 282. Under the circumstances of this case, where the plaintiffs were aware of their overtime claims, but chose to split them, the defendants should not have to be subjected to the costs and uncertainties associated with multiple lawsuits. See Giragosian, 547 F.3d at 65 (finding no unfairness in the application of claim preclusion where plaintiff was fully aware of his claims and voluntarily decided to split them).

The fact that the defendants opposed the motion to amend in the State Court Action does not alter this conclusion. Given that the motion was served within days of the original trial date, there was nothing unreasonable about the defendants' argument that it was too late to add a new legal theory.[8] Accordingly, there is no unfairness in

---

[8] The plaintiffs, quoting from Tinkham v. Jenny Craig, Inc., argue that the defendants "'should not be permitted to gain a dispositive advantage from the plaintiffs' failure to add ... claims to [Action I] after vigorously opposing such amendment. There would be something anomalous about giving a defendant the benefit of claim preclusion when that defendant took steps calculated to assure the exclusion of the claim from the prior litigation.'" (Pl. Opp. Mem. at 21 (quoting Tinkham, 45 Mass. App. Ct. at 574, 699 N.E.2d at 1259)). However, the facts of that case differ significantly from the present situation. In Tinkham, the plaintiffs were precluded from amending their state law complaint to add a discrimination claim which had been pending before the MCAD when suit was commenced. They therefore brought a second action which was

-24-

subjecting the plaintiffs to the consequences of their decision not to bring all of their claims in a single proceeding.

### E.  Policy Considerations

Finally, the plaintiffs argue that affording preclusive effect to the State Court Action would be incompatible with the federal interests and policies of the FLSA.  Again, their argument is unpersuasive.  The plaintiffs have not provided a sufficient basis for concluding that the policies served by the FLSA trump the policies served by principles of claim preclusion or the rule against claim splitting, or justify an exception to claim splitting principles.

In support of their argument, the plaintiffs rely on a provision of the Restatement of Judgments, which provides in relevant part as follows:

> A valid and final judgment of a state court has the same effects under the rules of res judicata in a subsequent action in a federal court that the judgment has by the law of the state in which the judgment was rendered, except that:
>
> (1) An adjudication of a claim in a state court does not preclude litigation in a federal court of a related federal claim based on the same transaction <u>if the federal claim arises under a scheme of</u>

---

allowed to proceed over the defendant's claim that it was barred by res judicata.  In <u>Tinkham</u>, unlike the instant case, it had been generally understood that the plaintiffs would add the discrimination claims once the MCAD proceedings were concluded.  Nevertheless, the defendant opposed the motion to amend "on exaggerated grounds that the motion violated the order of the [prior] judge" who had issued a scheduling order and who, in fact, had contemplated that the complaint would be amended.  <u>Tinkham</u>, 45 Mass. at 572, 699 N.E.2d at 1258.  Therefore, the plaintiff's inability to amend the complaint was "attributable not only to their own hapless maneuvering but also to the somewhat misleading procedural sparring" of the defendant.  <u>Id.</u>  No such wrongdoing on the defendants' part exists here.

<u>federal remedies which contemplates that the federal claim may be
asserted notwithstanding the adjudication in state court</u> ....

Restatement (Second) of Judgments § 86 (1982) (emphasis added).  The plaintiffs also
describe the purposes and policies of the FLSA.  However, they have not cited to any
case law or provisions of the FLSA indicating that the statutory scheme "contemplates
that the federal claim may be asserted" in a federal action despite the completion or
pendency of a transactionally related action in state court.  (<u>See</u> Pl. Opp. Mem. at 22- 24).
Nor have they cited to any relevant authority which suggests that claim splitting
principles must give way when FLSA claims are at issue.[9]  Therefore, the plaintiffs have
not shown that the rule against claim splitting should be disregarded.

Finally, the plaintiffs suggest that they are entitled to maintain their FLSA claims
because, after their motion to amend was denied, they filed a notice in the State Court
Action in which they stated that they were reserving their right to pursue such claims in
federal court.  (<u>See</u> Pl. Opp. Mem. at 24).  However, they have provided no authority to
support their assertion that claim preclusion principles can be overcome simply by filing a

---

[9]  The plaintiffs note that in <u>Barrentine v. Arkansas-Best Freight Sys., Inc.</u>, 450 U.S. 728,
101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981), the Supreme Court ruled that an employee's FLSA
claims are not barred by the prior submission of those claims to binding arbitration pursuant a
collective bargaining agreement.  However, the Court's ruling in that case was based on the fact
that "Congress intended to give individual employees the right to bring their minimum-wage
claims under the FLSA in court" and that "congressionally granted FLSA rights are best protected
in a judicial rather than in an arbitral forum[.]"  <u>Barrentine</u>, 450 U.S. at 745, 101 S. Ct. at 1447.
In contrast, Congress granted both the state and federal courts jurisdiction over FLSA claims,
thereby defeating any suggestion that FLSA claims are not subject to res judicata or claim
splitting principles where claims based on the same nucleus of operative facts were previously
brought in another court.  <u>See</u> 29 U.S.C. § 216(b).

unilateral reservation of rights in the prior action.  The case law on which the plaintiffs

rely is not applicable to the issues before this court, and establishes no such exception to

res judicata or the rule against claim splitting.  See England v. Louisiana State Bd. of

Med. Exam'rs, 375 U.S. 411, 84 S. Ct. 461 (1964) (where federal court abstains pending

state court decision on issue of state law, litigant must expressly reserve the right to

return to federal court to address federal claims or state court decision on federal claims

will be conclusive); Tobin v. Goggins, No.Civ.A. 75-2086-F, 1981 WL 380646, at *5 (D.

Mass. Jun. 5, 1981) (after commencing suits in both state and federal court and losing in

state court, plaintiff seeks to reactivate federal litigation.  Federal court declines to

dismiss action on grounds of failure to prosecute under Fed. R. Civ. P. 41(b), but leaves

open question whether suit should be dismissed on grounds of res judicata or collateral

estoppel).  If anything, these cases reaffirm that under usual circumstances a plaintiff is

only entitled to litigate once, and in a single forum.

## IV.  CONCLUSION

For all the reasons detailed herein, the "Defendants' Rule 12(c) Motion for

Judgment on the Pleadings" (Docket No. 18) is ALLOWED.


   / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge